

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
APR 22 2011
CLERK

| | |
|---|---|
| CLYDE F. MITTLEIDER<br><br>Plaintiff,<br><br>v.<br><br>CANADIAN PACIFIC RAILWAY COMPANY and CANADIAN PACIFIC RAILWAY LTD.<br><br>Defendants. | CIV 11-4054<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Clyde F. Mittleider (hereinafter "Clyde" or "the Plaintiff"), through his counsel of record, and for his cause of action against the Canadian Pacific Railway Company ("Canadian Pacific") and Canadian Pacific Railway Ltd. ("Limited") states and alleges as follows:

## NATURE OF THE ACTION

This is a diversity action to recover monies by Clyde against Canadian Pacific as a result of promises made to him regarding his employment with the Dakota Minnesota and Eastern Railroad ("DM&E"), and the Iowa, Chicago and Eastern Railroad ("IC&E").

## PARTIES

1. The Plaintiff is a citizen of the State of South Dakota and a resident of Lincoln County, South Dakota.

2. Both Canadian Pacific and Limited are both federally incorporated under the Canada Business Corporations Act with a principal place of business in Calgary, Alberta, Canada.

3. Canadian Pacific and Limited, through its subsidiaries, operate a transcontinental railway in Canada and the United States, including the District of South Dakota.

4.  On October 4, 2007, Canadian Pacific and/or Limited purchased DM&E and IC&E and Cedar American Rail Holdings for $1.48 billion. As a result of the acquisition, Canadian Pacific and Limited are responsible for all the debts and obligations of the DM&E and IC&E, including all agreements. Canadian Pacific and/or Limited's purchase of DM&E and IC&E was a stock purchase rather than an asset purchase, so Canadian Pacific and/or Limited acquired "all contracts and all agreements, not just the assets of the organization" as reflected in the September 30, 2008, letter to employees from Fred J. Green, President and Chief Executive Officer of Canadian Pacific attached hereto as Exhibit A.

5.  Canadian Pacific and Limited have their shares of stock traded on the Toronto and New York Stock Exchanges. Canadian Pacific and Limited assumed the day-to-day operations of the DM&E after the acquisition of the DM&E.

6.  The principal office of Canadian Pacific and Limited in the United States is in Minneapolis, Minnesota.

7.  At all times material, the DM&E conducted business in the District of South Dakota prior to the merger in 2008, and Canadian Pacific and Limited have conducted business in the District of South Dakota since 2008.

## JURISDICTION AND VENUE

8.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 based upon diversity of the parties. The amount in controversy exceeds the sum of $75,000.00.

9.  A substantial part of the events giving rise to this action occurred in South Dakota and thus venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 1391(a)(3).

## FACTS

### Clyde's Career with DM&E and IC&E

10. Clyde was hired by the DM&E on June 16, 1987 as a conductor and brakeman. He qualified as a locomotive engineer in October of 1987. On June 26, 1990, when the first collective bargaining agreement became effective between DM&E and the United Transportation Union ("the Union"), Clyde was listed on the seniority roster as a brakeman, conductor and engineer. On December 1, 1996, Clyde was promoted to manager of train operations at Huron, SD. This was a non-bargaining unit position with the Union. Clyde remained in that position through June of 2002.

11. DM&E purchased the assets of I & M Rail Link Railroad in 2002 renaming it IC&E and combined its management and dispatching duties with those of DM&E under the holding company Cedar American Rail Holdings.

12. As a result of the acquisition of IC&E by DM&E, Clyde was asked to accept a position as a superintendent in Mason City, IA. Clyde was concerned that as result of the acceptance of the position that he would lose the seniority in the Union that he had accumulated over the years.

13. Before Clyde assumed the superintendent position in Mason City, IA, Robert L. Brownell, then a vice-president of DM&E, assured Clyde that his seniority on DM&E Union rosters would be maintained after the promotion. Attached as Exhibit B is a letter dated June 24, 2002 to Clyde from Mr. Brownell confirming the promise regarding the seniority.

14. In addition, the then president of DM&E, Kevin Schieffer, similarly affirmed the promise that Clyde's seniority would be retained if he assumed the position for IC&E in Mason City, IA. Such affirmation was made in the District of South Dakota.

15. In reliance on the promises made by Mr. Brownell, who then became the president of IC&E, and Mr. Schieffer, Clyde signed an Offer of Employment with IC&E on June 27, 2002. Attached as Exhibit C is the Offer of Employment.

16. The promises that were made to Clyde by Mr. Brownell were made initially in Brookings County, SD, at the headquarters of DM&E. The letter that was sent to Clyde by Mr. Brownell was sent to him at his residence in Huron, SD.

17. At all times material, Clyde expressed to his superiors at DM&E his concerns about retaining his Union seniority rights. Mr. Brownell and Mr. Schieffer assured him at all times material that he would retain his seniority rights for his continued service with DM&E.

18. Had promises not been made by Mr. Brownell and Mr. Schieffer, Clyde would not have accepted the position as superintendent in Mason City, IA for the IC&E in 2002 and would have remained in his supervisor position in Huron, SD.

19. Mr. Brownell's employment with IC&E terminated on or about February of 2004.

20. In 2004, Clyde was promoted to assistant chief transportation officer with duties and responsibility over both DM&E and IC&E. In conjunction with this promotion, Clyde moved to Sioux Falls, SD, in April of 2004.

21. As a result of his promotions, the Union challenged whether Clyde could retain his seniority status with the Union. The Union asked that Clyde's name be removed from the Union seniority roster of DM&E.

22. An arbitration hearing was held before the Public Law Board No. 6820 ("the Board"). In August of 2005, the Board ruled that Clyde's name shall be removed from the DM&E seniority roster.

23. At all times material to the arbitration proceeding, Clyde's superiors at DM&E, Mr. Brownell and Mr. Schieffer, assured Clyde that in the event that the arbitration was unfavorable for Clyde that he would in substance be made whole for the loss of any seniority benefits as a result of the transfer he made in 2002.

24. Clyde relied on the assurances made by his superiors regarding the arbitration proceeding and in exercising all rights and obligations that arose from the arbitration award.

25. Clyde continued to be concerned about the promises that had been made by Mr. Brownell and Mr. Schieffer to him regarding retaining his seniority rights.

26. Throughout his employment with DM&E and IC&E, the promises to guarantee Clyde's seniority and to make him whole were reaffirmed by both Mr. Brownell and Mr. Schieffer.

## Acquisition by Canadian Pacific and Limited

27. In September of 2007, it was announced that the Canadian Pacific would acquire DM&E upon approval by the Surface Transportation Board of the United States Department of Transportation ("the STB"). The STB announced its approval of the purchase plan on September 30, 2008 with the official last day of operations for DM&E scheduled for October 30, 2008. The merger was complete as of October 31, 2008.

28. As part of the obligations of the acquisition, the Canadian Pacific and Limited assumed the obligations of DM&E, which would have included the promises and contractual obligations made by the Chief Executive Officers Mr. Brownell and Mr. Schieffer as shown on Exhibit A.

29. Mr. Schieffer's employment terminated with DM&E on or about October 7, 2008.

30. Canadian Pacific had, from time to time in the years 2007 and 2008 made representations to employees that they intended to maintain their operations in South Dakota.

31. In May of 2010, Clyde was contacted by Doug McFarland, President of United States operations for Canadian Pacific, and informed that his position at the time was being relocated to Minneapolis. Clyde asked whether he could commute to his new position in Minneapolis, he was informed that company policy prohibited him from commuting. Instead, Clyde was given a different position, namely Assistant Director of NMC-DME, and Clyde remained in Sioux Falls.

32. On or about June 24, 2010, Canadian Pacific informed employees of DM&E that they were going to be moving their principal operations to Minneapolis, MN.

33. On October 8, 2010, Clyde provided a letter dated October 8, 2010 to Terry Bagaus, GM Transportation – US for Canadian Pacific Railway, indicating that Clyde desired to return to "the ranks" and wanted a job in Brookings. The letter from Clyde is attached as Exhibit D. This letter was precipitated by a letter dated September 30, 2010 from Terry Bagaus regarding an offer of position in the Minneapolis, MN location.

34. As part of this request to Mr. Bagaus, he furnished a letter dated August 28, 2009, which was signed by Robert Brownell, which was in part drafted and approved by Kevin Schieffer, reconfirming the promises that he had been made to him by previous executive offices of DM&E, which is attached as Exhibit E.

35. Canadian Pacific and/or Limited has refused and declined to restore his seniority rights as promised to him. Canadian Pacific and/or Limited have refused to honor the promises made to him by the Chief Executive Officers of DM&E and IC&E.

36. On February 22, 2011, Clyde received a letter from Terry Bagaus notifying him that his current position in the Sioux Falls, SD, office would be eliminated effective March 25, 2011.

37. As a result of the elimination his position and the breach of the promises made to him, Clyde has been damaged in a sum of money that exceeds $75,000.00 for the loss of his salary and employment benefits that have been promised to him from previous chief executive officers of DM&E and IC&E.

## COUNT I-BREACH OF CONTRACT
## (RETENTION OF SENIORITY)

38. Clyde alleges paragraphs 1 through 39 and incorporates them in full as though fully set forth herein.

39. DM&E made an enforceable promise to Clyde that Clyde would retain his Union seniority when:

   a. Robert Brownell promised Clyde that Clyde would maintain his seniority. This promise is confirmed in the letter from Robert Brownell dated June 24, 2002;

   b. Kevin Schieffer, as president of DM&E, promised Plaintiff that Plaintiff would maintain his seniority prior to Plaintiff's acceptance of the position with IC&E; and/or

   c. Both Robert Brownell and Kevin Schieffer promised Plaintiff multiple times after Plaintiff started work with IC&E that Plaintiff would maintain his seniority.

40. DM&E breached the promise.

41. The breach of the promise caused Clyde to incur damages in an amount to be proven at trial

42. Canadian Pacific and Limited, as the successors to DM&E, are jointly and severally liable for the damages caused by DM&E's breach of the promise.

### COUNT II-BREACH OF CONTRACT
### (MAKE WHOLE FOR LOSS OF SENIORITY)

43. Clyde alleges paragraphs 1 through 44 and incorporates them in full as though fully set forth herein.

44. DM&E, through Robert Brownell and Kevin Schieffer, promised to make Clyde whole for the loss of his Union seniority benefits if Clyde lost his seniority benefits.

45. DM&E breached the promise.

46. The breach of the promise caused Clyde to incur damages in an amount to be proven at trial.

47. Canadian Pacific and Limited, as the successors to DM&E, are jointly and severally liable for the damages caused by DM&E's breach of the promise.

### COUNT III—PROMISSORY ESTOPPEL

48. Clyde alleges paragraphs 1 through 49 and incorporates them in full as though fully set forth herein.

49. In order to induce Clyde to accept the position at IC&E, DM&E promised that Plaintiff would retain his seniority with the Union even if he accepted the position with IC&E.

50. Clyde detrimentally relied upon the promise made by DM&E when he accepted the position with IC&E.

51. When Clyde accepted the position with IC&E in reliance on DM&E's promise, Plaintiff experienced detriment because he lost his seniority.

52. The loss of the seniority was foreseeable to DM&E.

53. Clyde acted with justifiable reliance when the Plaintiff relied upon the promise from DM&E.

54. Clyde's detrimental reliance on DM&E's promise caused Plaintiff to incur damages in an amount to be determined at trial.

55. Canadian Pacific and Limited, as the successors to DM&E, are jointly and severally liable for the damages caused by DM&E's breach of the promise.

**WHEREFORE**, Clyde respectfully request:

1. A judgment against Canadian Pacific and Limited, jointly and severally, for damages in an amount to be proven and awarded at trial;

2. Prejudgment interest as allowed by law on all items of damages awarded by the jury of the maximum rate of interest;

3. Plaintiff be awarded its costs and disbursements of this proceeding; and

4. Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: April 22, 2011

*/s/ Thomas J. Welk*

Thomas J. Welk
Lisa Hansen Marso
Jason R. Sutton
BOYCE, GREENFIELD, PASHBY & WELK, LLP
101 North Phillips Avenue, # 600
P.O. Box 5015
Sioux Falls, SD  57117-5015
Telephone: (605) 336-2424
tjwelk@bgpw.com
lkmarso@bgpw.com
jrsutton@bgpw.com
**Attorney for Plaintiff
Clyde F. Mittleider**