UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CLYDE F. MITTLEIDER, | ) | CIV. 11-4054-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CANADIAN PACIFIC RAILWAY | ) | |
| COMPANY; and | ) | |
| CANADIAN PACIFIC RAILWAY LTD., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Clyde F. Mittleider, brought this action against defendants,
Canadian Pacific Railway Company (CPR Co.), and Canadian Pacific Railway
Ltd. (CPR Ltd.) (collectively defendants) alleging state-law breach of contract
and promissory estoppel claims. Defendants move for judgment on the
pleadings (Docket 17), which Mittleider opposes. Mittleider moves to strike the
collective bargaining agreement (CBA) from the record (Docket 23), which
defendants resist. Mittleider also moves to amend his complaint (Docket 25),
which defendants resist.

**BACKGROUND**

Assuming all of the factual allegations in the complaint as true, the
pertinent facts to this order are as follows:

Dakota, Minnesota, and Eastern Railroad (DM&E) hired Mittleider on
June 16, 1987, as a conductor and brakeman. He qualified as a locomotive

engineer in October of 1987. On June 26, 1990, when the first CBA between DM&E and the United Transportation Union (the Union) became effective, Mittleider was listed on the seniority roster as a brakeman, conductor, and engineer. On December 1, 1996, DM&E promoted Mittleider to manager of train operations in Huron, South Dakota, which was a non-union position. Clyde remained in that position until June of 2002.

In 2002, DM&E purchased the assets of I & M Rail Link Railroad, and renamed the line the Iowa, Chicago, and Eastern Railroad (IC&E). DM&E combined the management and dispatching duties of the two railroads under the holding company of Cedar American Rail Holdings. DM&E asked Mittleider to accept a position as a superintendent in Mason City, Iowa, but Mittleider was concerned about losing the seniority he had accumulated over the years.

Robert L. Brownell, then a DM&E vice-president, assured Mittleider that if he accepted the Mason City job he would retain his seniority at DM&E. Kevin Schieffer, DM&E's then-president, similarly affirmed that Mittleider's seniority would be retained if he accepted the job. Mittleider periodically expressed concerns to Brownell and Schieffer about losing his seniority and both men reassured Mittleider that he would not lose his seniority rights. Brownell and Schieffer also assured Mittleider that, in the event that a dispute over his seniority arose and resulted in an unfavorable arbitration award, Mittleider would be made whole for the loss of any seniority benefits as a result of

2

transferring to IC&E. Mittleider claims that he relied on these promises in accepting the Mason City position.

In 2004, Mittleider was promoted to assistant chief transportation officer in Sioux Falls, South Dakota with duties and responsibilities at both DM&E and IC&E. DM&E again promised that Mittleider's union security would remain intact. The Union challenged Mittleider's seniority rights and argued that Mittleider should be removed from DM&E's Union seniority roster.

The seniority dispute proceeded to arbitration before the Public Law Board Number 6820 (the Board). In August of 2005, the Board ruled that Mittleider's name would be removed from the seniority roster.

On October 31, 2007, defendants finalized their purchase of DM&E (which also included the purchase of IC&E and Cedar American Rail Holdings) in a stock purchase agreement. As a result of these acquisitions, defendants are responsible for the debts and obligations of IC&E and Cedar American Rail Holdings, including all agreements. Defendants assumed day-to-day operations of DM&E after the acquisition. Schieffer's employment with DM&E ended in October of 2008.

In May of 2010, Doug McFarland, President of CPR Co.'s United States operations, contacted Mittleider and informed him that his position was being relocated to Minneapolis. Defendants denied Mittleider's request to commute to Minneapolis. Instead, defendants gave Mittleider a different position, Assistant

Director of NMC-DME in Sioux Falls. On June 24, 2010, defendants informed DM&E employees that the company's principal operations would be moved to Minneapolis.

In a letter dated September 30, 2010, Terry Bagaus, defendants' general manager for transportation, offered Mittleider a position in Minneapolis. In Mittleider's response letter dated October 8, 2010, Mittleider stated that he desired to return to "the ranks" and requested a job in Brookings, South Dakota. Mittleider included a letter dated August 28, 2009, from Brownell and approved by Schieffer, which confirmed the promises from these two men that Mittleider would retain his seniority if he accepted the Mason City position. Defendants did not offer Mittleider a position in Brookings.

On February 22, 2011, Mittleider received a letter from Bagaus notifying him that his current position in Sioux Falls would be eliminated on March 25, 2011. On April 22, 2011, Mittleider filed his federal complaint alleging a breach of contract claim for retention of seniority, a breach of contract claim for the promise to make him whole in the event of an adverse Board decision, and a promissory estoppel claim.

After the parties' June 13, 2011, Rule 26 conference, defendants indicated to Mittleider via email that DM&E is the correct defendant. Docket 27-1 at 1 ("DM&E remains a separate corporation and is the only employer of Clyde Mittleider after the merger. All liabilities and obligations remained with

DM&E after the merger. We seek your substitution of DM&E as the sole defendant[.]"). On July 7, 2011, Mittleider requested financial information from defendants regarding DM&E before he would consent to a substitution. Docket 27-1 at 1. On September 7, 2011, Mittleider's counsel sent a letter to defendants' counsel requesting that they consent to an amendment of the complaint. Docket 27-2. On September 12, 2011, defendants' counsel sent an email indicating that they were evaluating the request to stipulate to the amendment. Docket 27-3. Defendants did not send a formal response to the proposed amendment before filing their motion for judgment on the pleadings.

## DISCUSSION

Defendants move for judgment on the pleadings under Rules 12(b)(1), 12(b)(6), 12(c), and 12(d) and assert two primary arguments. First, defendants assert that the Railway Labor Act (RLA), which governs railroad labor disputes, *see* 45 U.S.C. § 151a, preempts Mittleider's claims and, thus, the court lacks subject matter jurisdiction over this action. The court will construe this portion of the motion as being made pursuant to Rules 12(b)(1) and 12(d). Second, defendants argue that they are the incorrect defendants in this action because Mittleider cannot pierce the corporate veil to recover from them. The court will construe this portion of the motion as being made pursuant to Rules 12(b)(6) and 12(c).

## I.   Rule 12(b)(1) Motion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that the court may dismiss an action for lack of subject matter jurisdiction. Rule 12(b)(1) " 'is rooted in the unique nature of the jurisdictional question.' " *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In determining a Rule 12(b)(1) motion, the court may look to evidence outside the pleadings. *Id.* Reviewing outside evidence under Rule 12(b)(1) does not convert the motion into a Rule 56(c) summary judgment motion like reviewing outside evidence does in the context of a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. *Deuser v. Vecera*, 139 F.3d 1190, 1192 n.3 (8th Cir. 1998).

Defendants assert that they are raising a facial, not factual, challenge to subject matter jurisdiction, which allows the court to consider documents beyond the pleadings as long as those materials are referenced in the complaint or the documents' authenticity is undisputed. *See Jenisio v. Ozark Airlines, Inc.*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) (reasoning that the district court did not err in examining the CBA and pension plan to assess subject matter jurisdiction). Mittleider does not dispute that defendants raise a facial challenge. *See* Docket 22 at 4 ("The Defendants state they are making a 'facial' attack on Clyde's Complaint. This argument will not alter the standard that the Court uses to review their Motion." (internal citation omitted)). Upon a facial

6

challenge to jurisdiction, all of the factual allegations in the complaint are presumed to be true. *Titus v. Sullivan*, 4 F.3d 590, 593 n.1 (8th Cir. 1993) (citations omitted).

The plaintiff bears the burden to establish that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). If the court finds that subject matter jurisdiction is lacking, it must dismiss the case. Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

## B.  Preemption

Defendants contend that the court lacks subject matter jurisdiction over this action because the RLA preempts Mittleider's claims. "Whether a federal law preempts a state law establishing a cause of action is an issue of congressional intent," *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)), and " 'should not be lightly inferred.' " *Id.* (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987)).

The Supreme Court interpreted RLA's congressional intent in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994):[1] "Congress' purpose in passing the

---

[1] The RLA also applies to the airline industry. *See Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 272 (8th Cir. 1994) ("The RLA was enacted in 1926

RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* at 252 (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987); 45 U.S.C. § 151a). "To realize this goal, the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement of two classes of disputes,' " namely major and minor disputes. *Hawaiian Airlines*, 512 U.S. at 252 (quoting 45 U.S.C. § 151a). If a dispute is minor and does not depend on the interpretation of a CBA, then it preempts a state-law claim, and the claim may only be adjudicated through a railroad adjustment board, meaning that the district court does not have subject matter jurisdiction. *Id.* at 253. If it is major, then the claim need not be adjudicated through an adjustment board and the district court has jurisdiction. *Id.*

In *Hawaiian Airlines*, the Supreme Court adopted a narrower preemption standard for the RLA than that which had been previously utilized. *See Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (citing *Hawaiian Airlines* and acknowledging that "that the scope of RLA preemption has been narrowed by [a] recent Supreme Court decision[.]"); *see also Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 272 (8th Cir. 1994) ("We think *Hawaiian Airlines* narrowed the scope of federal pre-emption [sic] under the RLA." (citing *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 317-18 (7th Cir. 1994); *Piper v.*

_____

and was extended to cover the airline industry in 1936.").

*Alaska Airlines, Inc.*, 34 F.3d 1073, 1994 WL 424292, at *4 (9th Cir. 1994) (table decision))).

*Hawaiian Airlines* adopted the preemption test from *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), which addressed preemption under the Labor Management Relations Act. *Hawaiian Airlines*, 512 U.S. at 266. According to *Lingle*, if the issue to be decided is a purely factual question, then the issue is not preempted by the RLA. *Id.* at 266 (citing *Lingle*, 486 U.S. at 407). A claim is preempted only if it is firmly rooted in a breach of the CBA. " '[M]inor disputes' subject to RLA arbitration are those that involve duties and rights created or defined by the CBA." *Id.* at 258 (citing *Buell*, 480 U.S. at 557); *see also Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000) ("Under the RLA, parties are obligated to arbitrate minor disputes, which are controversies arising out of the application or interpretation of the collective bargaining agreement, and therefore, complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement." (citing *Hawaiian Airlines*, 512 U.S. at 256-59)). Essentially, " 'major disputes seek to create contractual rights, minor disputes to enforce them.' " *Hawaiian Airlines*, 512 U.S. at 253 (quoting *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302 (1989)). *See also Bhd. Ry. Carmen v. Mo. Pac. R.R. Co.*, 944 F.2d 1422, 1426 (8th Cir. 1991) ("In general, a major dispute involves an effort to secure new contractual rights, while a minor dispute

involves the interpretation or application of an existing agreement." (citations omitted)).

As the employer, defendants have the burden to establish that the dispute is minor. *Bhd. Ry.*, 944 F.2d at 1427 (citing *Consol. Rail*, 491 U.S. at 305-06, 319). But Mittleider retains the burden to prove that the court has subject matter jurisdiction. *V S Ltd.*, 235 F.3d at 1112. The Eighth Circuit has reasoned "that a party shoulders a relatively light burden in establishing exclusive arbitral jurisdiction under the RLA. In fact, there is a presumption that disputes are minor and thus arbitrable." *Jenisio*, 187 F.3d at 973 (internal citations and quotations omitted); *see also Schiltz*, 115 F.3d at 1414 ("If doubts arise as to the type of dispute at issue, a court should construe the dispute as minor." (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Soo Line R.R.*, 850 F.2d 368, 377 (8th Cir. 1988) (en banc))).

Mittleider alleges three causes of action, a breach of contract claim based on retention of seniority, a breach of contract claim to make him whole for the loss of seniority, and a promissory estoppel claim.[2] Mittleider claims that

---

[2] Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 433 (S.D. 2010) (citation omitted). South Dakota law allows oral contracts unless a statute requires the contract to be in writing. SDCL 53-8-1. South Dakota employs a three-part promissory estoppel test: (1) "the detriment suffered in reliance must be substantial in an economic sense;" (2) "the loss to the promisee must have been foreseeable by the promisor;" and (3) "the promisee must have acted reasonably in justifiable reliance on the promise made." *Hahne v. Burr*, 705 N.W.2d 867, 873 (S.D. 2005) (citations omitted).

Brownell and Schieffer promised him that he would maintain his Union seniority and both men made multiple promises to Mittleider after he began work ensuring him that he would maintain his seniority. Docket 1 ¶ 39. Mittleider argues that DM&E breached these promises, which gives rise to his breach of contract claim on the retention of seniority and his promissory estoppel claim. Docket 1 ¶ 40. Mittleider further claims that Brownell and Schieffer promised to make him whole if he lost his seniority benefits, which is the basis of his breach of contract claim on the promise to make him whole for any loss of seniority rights in the event of an adverse Board decision. Docket 1 ¶ 44.

*Barbanti v. MTA Metro North Commuter Railroad*, 387 F. Supp. 2d 333 (S.D.N.Y. 2005) is instructive here. In *Barbanti*, the plaintiff was employed as an electronic specialist by a railroad. *Id.* at 335. The defendant-railroad's representative, which had a CBA with a union, told the plaintiff that if he left his current job he would be given a protected, supervisory position as a signal inspector. *Id.* The plaintiff left his job and began working as a signal inspector. *Id.* The union objected to plaintiff's placement in this position and the plaintiff was forced out of the signal inspector position into a lower-paid electronic technician position. *Id.* The plaintiff asserted state-law claims for fraudulent inducement, breach of contract, and negligent/reckless misrepresentation against the defendant railroad. *Id.* at 336. The court found that because the

11

plaintiff essentially created a separate contract with the defendant, the plaintiff's claims were "grounded in rights and obligations that exist independent of the collective-bargaining agreement[,]" and none of the plaintiff's claims "would require *interpreting* the . . . CBA." *Id.* at 337-38. Thus, the plaintiff's claims were not preempted. *Id.* at 338.

Here, Mittleider does not claim that he is entitled to seniority rights due to a provision in the CBA. Accepting as true the facts contained in Mittleider's complaint, all of his state-law claims stem from the promises that Brownell and Schieffer made to him concerning his seniority rights. These promises created rights independent of those that exist in the CBA. Because the dispute here does not involve an interpretation of the CBA, the RLA does not preempt the dispute. *See Hawaiian Airlines*, 512 U.S. at 256 ("[T]he RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA.").

Defendants argue that Mittleider "challenges the Public Law Board's decision striking Mittleider's name from the UTU seniority list and DM&E's compliance with that directive," and that the court cannot resolve this question without interpreting the CBA. Docket 18 at 8. The court has reviewed defendants' cited cases in support of their argument and finds that the majority of the cases are not persuasive because they were decided under the broader pre-*Hawaiian Airlines* standard and because the cases are factually

12

distinguishable from this case.[3] Defendants, however, rely on two post-*Hawaiian Airlines* cases, *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407 (8th Cir. 1997) and *Evermann v. BNSF Railway Co.*, 608 F.3d 364 (8th Cir. 2010), which are factually distinguishable from this action.

In *Schiltz*, the employee began working for a railroad as a union member in Chicago. *Id.* at 1409. After the railroad merged with defendant, Burlington Northern Railroad (BNR), the employee voluntarily took a non-union position with BNR in St. Paul, Minnesota. *Id.* The employee worked in this position for 21 years until he received a termination notice stating that his non-union position would be eliminated. *Id.* BNR gave the employee three options and the employee chose to exercise his union seniority rights in a location where he had union seniority. *Id.* at 1410. The employee attempted to exercise his seniority rights in the St. Paul district, but his seniority rights were only valid in the northeastern district, which did not include St. Paul. *Id.* The employee grieved the location of his seniority rights and all levels of review held that his

---

[3]   *See, e.g.*, *Allen v. United Transp. Union*, 964 F.2d 818, 821-22 (8th Cir. 1992) (reasoning that the RLA preempted state-law claims regarding how seniority was calculated under the CBA because a resolution of the claims would involve an interpretation of the CBA); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 563 (9th Cir. 1991) (holding that the RLA preempted a state-law claim of an employee who transferred companies and reasoned that *Lingle*'s standard of preemption did not apply to the RLA, a position which *Hawaiian Airlines* expressly rejected)*; Brown v. Am. Airlines, Inc.*, 593 F.2d 652, 655-56 (5th Cir. 1979) (holding that the RLA preempted state-law claims concerning a breach of a settlement agreement for a laid-off employee because the validity of the agreement could only be assessed by interpreting the CBA).

seniority rights were only valid in the northeastern district. *Id.* The employee then filed suit in federal court alleging, among other claims, a breach of contract claim and a breach of the duty of fair representation under the RLA. *Id.*

The Eighth Circuit reasoned that the dispute was minor because "[t]he gravamen of [plaintiff's] argument revolves around the interpretation of the contract language in the CBA . . . and the place of the vesting of Schiltz's seniority rights." *Id.* at 1414. The CBA's language directly addressed the issue facing the court. *See id.* (" 'When a Protected Employee transfers to another seniority district as a result of changes of operation or work transfer, his seniority shall be dovetailed into the roster to which transferred and his name shall be removed from the roster from which he transfers.' " (quoting the CBA)).

In *Evermann*, the employee brought suit pursuant to a Nebraska statute because the employer-railroad would not reimburse him for "productivity shares" that he lost when he served on a federal grand jury. *Id.* at 366. The court held that the RLA preempted the employee's state-law claim because "[n]ot only the existence but also the scope of the entitlement depends on the collective bargaining agreement." *Id.* (citation omitted).[4]

---

[4] Defendants, citing *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342 (1944) and *Spearfish Education Association v. Spearfish School District No. 40-2*, 780 N.W.2d 481 (S.D. 2010), contend that the enforceability of an extra-CBA labor contract depends upon an interpretation of the CBA. *Order of Railroad Telegraphers* is factually distinguishable because there the employer made no additional promises to the

Here, unlike *Schiltz* and *Everman*, defendants cite no provision of the CBA that the court will need to interpret to determine if promises were made by Brownell and Schieffer to Mittleider and whether those promises were breached.[5] Even if Mittleider were successful in his claims and the court had to consult the CBA to determine how much seniority Mittleider should be awarded, consulting the CBA in awarding a remedy does not mean that the RLA preempts the plaintiff's claim. *See id.* at 367 (reasoning that " 'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.' " (quoting *Hawaiian Airlines*, 512 U.S. at 256)). Brownell and Schieffer's promises were made independent of any rights that Mittleider had in the CBA regarding seniority and, thus, neither the existence nor the scope of Mittleider's entitlement to those rights depends on the CBA.

*Schiltz*, *Evermann*, and defendants' other arguments are not persuasive. Defendants have not met their burden to prove that the RLA preempts Mittleider's claims. To the extent that the court construed defendants' motion as a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the motion is denied.

---

employees and expressly violated the CBA in its actions. *See* 321 U.S. at 344. *Spearfish* is legally distinguishable because it involves an interpretation of *state-law* collective bargaining rights. *See* 780 N.W.2d at 488.

[5] The court has reviewed Section 1.20 of the CBA and finds that an interpretation of Section 1.20 is not necessary to resolve Mittleider's claims.

## II.   Rule 12(c) Motion

### A.  Standard of Review

" 'Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law,' the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)[.]" *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).

A motion to dismiss under Rule 12(b)(6) or Rule 12(c) challenges the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) ("[I]f as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations a claim must be dismissed." (internal citation and quotations omitted)). To survive a motion for judgment on the pleadings, "the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.' " *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009)).

To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ____, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (reasoning that a plaintiff must allege enough facts to "nudge

16

[its] claims across the line from conceivable to plausible[.]"). In making this determination, the court must accept the facts alleged as true, even if they are doubtful. *Twombly*, 550 U.S. at 555.

### B. Analysis

Defendants argue that Mittleider brought suit against the wrong defendants because "[t]he only conceivable theory of liability against [CPR Co. or CPR Ltd.] would be piercing the corporate veil—allegations that cannot be found in the complaint and that lack factual basis." Docket 18 at 14.[6] Mittleider responds that this argument is premature because the complaint adequately alleges that defendants are liable for DM&E's debts and obligations.

In his complaint, Mittleider alleged that when defendants acquired DM&E, they also "assumed the obligations of DM&E, which would have included promises and contractual obligations made by the Chief Executive Officers Mr. Brownell and Mr. Schieffer[.]" Docket 1 ¶¶ 27-28. At the judgment

---

[6] Early in their brief, defendants state that they "challenge personal jurisdiction," Docket 18 at 1, but later request that the court decide their motion on the merits, meaning determining whether the court has subject matter jurisdiction or if the RLA preempts this action. It appears that defendants have waived their personal jurisdiction claim. A defendant can waive personal jurisdiction by its conduct, including failing to contest personal jurisdiction in a Rule 12 motion. *See, e.g., Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1163 (8th Cir. 1999) ("Hyundai Motor Company voluntarily appeared in the district court and joined in defendants' Rule 12(b)(6) motion to dismiss without contesting the court's personal jurisdiction, thereby waiving that issue." (citing Fed. R. Civ. P. 12(h)(1))); *see generally* Fed. R. Civ. P. 12(h)(1) (discussing when parties have waived a defense of lack of personal jurisdiction).

on the pleadings stage, the court assumes that the complaint's factual allegations are true. *Ritche*, 630 F.3d at 716. If those allegations are true, Mittleider has stated a cause of action against defendants.

Defendants also request oral argument pursuant to D.S.D. Civ. LR 7.1, which provides that the court *may* order oral argument on a motion. Finding oral argument unnecessary to resolve this motion, defendants' request for oral argument is denied.

## III.   Motion to Amend the Complaint

### A.   Standard of Review

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). After the parties' Rule 26 conference, defendants indicated to Mittleider that the proper corporate defendant was DM&E. After requesting time to investigate DM&E's assets, Mittleider agreed that DM&E should also be named as a defendant and sought leave to amend from defendants. Defendants did not respond to Mittleider's request to consent to the amendment before filing their motion for judgment on the pleadings. Thus, Mittleider needs the court's permission to amend his complaint.

The purpose of pleading under the federal rules "is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). The federal rules further this purpose by declaring that "[t]he Court should freely

give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman*, 371 U.S. at 182.

"Given the courts' liberal viewpoint towards leave to amend, it should normally be granted absent a good reason for denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989)). The court should grant leave "[u]nless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment.' " *Becker v. Univ. of Neb.*, 191 F.3d 904, 907-08 (8th Cir. 1999) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir.1992)). The district court retains discretion to grant or deny leave to amend a complaint. *Foman*, 371 U.S. at 182

**B. Analysis**

Defendants' only argument in opposition to Mittleider's motion to amend is that amendment would be futile because Mittleider's claims, no matter which company is named as a defendant, are preempted by the RLA. As stated above, however, the RLA does not preempt Mittleider's claims.

There is no indication that Mittleider unduly delayed seeking leave of court to amend his complaint, that he acted in bad faith or had a dilatory motive, and there has been no repeated failure to cure deficiencies. There is no undue prejudice to defendants, especially because defendants initially

19

proposed to Mittleider that he amend his complaint to include DM&E as a defendant. Because an amendment to Mittleider's complaint serves the interests of justice, Mittleider's motion to amend is granted.

## IV.   Motion to Strike

Mittleider moves to strike exhibit one, a copy of the CBA, from Decker's affidavit dated September 13, 2011. Docket 19-1. Mittleider argues that Decker cannot provide foundation for the CBA and, because defendants moved for judgment on the pleadings, the court cannot look to evidence outside the pleadings. Defendants later cured Mittleider's foundational concerns. *See* Docket 32 at 2. Because defendants moved under Rule 12(b)(1) to challenge the court's subject matter jurisdiction, the court can review material contained outside the pleadings. *Osborn*, 918 F.2d at 729. The court only reviewed the CBA as it concerned the Rule 12(b)(1) motion. Thus, Mittleider's motion to strike is denied.

**CONCLUSION**

Defendants challenge the court's subject matter jurisdiction under Rule 12(b)(1) by arguing that the RLA preempts Mittleider's state-law claims. Because the RLA does not preempt Mittleider's claims, the court has subject matter jurisdiction over this case. Defendants further argue, pursuant to Rule 12(c), that they are entitled to judgment on the pleadings because Mittleider named the wrong defendants. Because the court assumes all allegations in the

complaint to be true when ruling on a motion for judgment on the pleadings, defendants' motion is denied. Absent a finding of RLA preemption, defendants do not oppose Mittleider's motion to amend his complaint. Thus, the motion to amend is granted. Mittleider's motion to strike the CBA from the record is denied because Rule 12(b)(1) allows the court to review materials outside the pleadings in determining whether the court has subject matter jurisdiction. Accordingly, it is

ORDERED that defendants' motion for judgment on the pleadings (Docket 17) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to amend the complaint (Docket 25) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to strike (Docket 23) is denied.

Dated April 12, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

21